## IN THE UNITED STATES DISTRICT COURT
## FOR THE TENTH CIRCUIT IN KANSAS

| | |
|---|---|
| **MURIEL MARTIN** ) | |
| 807 Tam-O-Shanter Drive ) | |
| Kansas City, MO 64145 ) | |
| ) | |
| **Plaintiff,** ) | Case No. |
| ) | |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **SAINT LUKE'S HEALTH SYSTEM, INC.** ) | |
| **D/B/A SAINT LUKE'S A/K/A** ) | |
| **SAINT LUKE'S PRIMARY CARE** ) | |
| **-BLUE VALLEY** ) | |
| 5405 W. 151st Street ) | |
| Leawood, KS 66224 ) | |
| ) | |
| Serve: Registered Agent ) | |
| **Corporation Service Company** ) | |
| **2900 SW Wanamaker Dr. Suite 204)** | |
| **Topeka, KS 66614** ) | |
| ) | |
| **And** ) | |
| ) | |
| **CITY OF LEAWOOD, KANSAS,** ) | |
| 4800 Town Center Dr. ) | |
| Leawood, KS 66211 ) | |
| **Serve: Peggy Dunn** (Mayor) ) | |
| 4800 Town Center Dr. ) | |
| Leawood, KS 66211 ) | |
| ) | |
| **And** ) | |
| ) | |
| **JACOB WOODS,** ) | |
| **(Leawood Police Officer in his official and** ) | |
| **individual capacity** ) | |
| 4201 Town Center Dr. ) | |
| Leawood, KS 66209 ) | |
| ) | |
| **DALE FINGER,** ) | |
| **(Chief of Police for the City of Leawood in his** ) | |
| **official and individual capacity** ) | |
| 4201 Town Center Dr. ) | |
| Leawood, KS 66209 ) | |
| ) | |

Defendants.                    )

## COMPLAINT

## I. Preliminary Statement

1. COMES NOW, Plaintiff, Muriel Martin, by and through her attorneys of record, of the law firm Baldwin & Vernon, and brings this cause of action against Defendant Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley, hereinafter referred to as "Defendant" or "Defendant Company" or "St. Luke's," and Defendant City of Leawood, Kansas (hereinafter "Defendant City"), and Defendant Jacob Woods and Defendant Dale Finger. This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and cost and attorneys' fees in accordance with Federal Rules of Civil Procedure 54, for Defendant's conduct and actions taken against Plaintiff.

## II. Jurisdiction & Venue

2. This Court has jurisdiction over the subject matter and over the parties named herein, because all Defendants are believed to be domiciled within the State of Kansas and all events giving rise to the claims occurred in the State of Kansas.

3. This Court has original jurisdiction in this action pursuant to 28 U.S.C. sections 1331 and 1343, 42 U.S.C. 1981, 42 U.S.C. §1983, in as much as the matter in controversy is brought pursuant to Title III of the ADA, 42 U.S.C. §12182, 28 CFR 35.130, and 42 U.S.C. §12101, et seq.

4. Plaintiff is alleging claims of public accommodation under the Title III of the ADA, 42 U.S.C. §12182, 28 CFR 35.130, Title VI of the Civil Rights Act of 1964, and discrimination under 42 U.S.C. §1981, and civil rights violations under 42 U.S.C. §1983, and claims under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. 1395dd.

5. This is an action for declaratory and permanent injunctive relief to enforce the rights of Plaintiffs' members under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42

U.S.C § 1395dd.

6. Because this is a civil action arising under laws of the United States, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Because Defendants reside within the Federal District of Kansas, venue is proper under 28 U.S.C. § 1391(b)(1).

## EMTALA STATUTORY FRAMEWORK

7. EMTALA states, *inter alia*, that any hospital that receives Medicare funds and operates an emergency department:

    i. must stabilize any individual determined to have an emergency medical condition, *see* 42 U.S.C.§ 1395dd(b); and

    ii. ii. may not transfer (which includes discharge) any individual with an emergency medical condition who has not been stabilized, unless, *inter alia*, the individual requests a transfer or a physician certifies that the benefits of a transfer to another medical facility outweigh the increased risks to the patient, *see id.* § 1395dd(c).

8. EMTALA defines an emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual . . . in serious jeopardy, [cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." Id. § 1395dd(e)(1)(A).

9. EMTALA defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" Id. § 1395dd(e)(3)(A).

10. Defendant Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley receive Medicare funds and operate emergency departments and are subject to the requirements of EMTALA.

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (b)(1) and (2), because all Defendants reside in this judicial district and all events giving rise to the claim occurred in this judicial district.

### III. Parties

12. Plaintiff is an individual and resident of United States, State of Missouri, residing at 807 Tam-O-Sham Drive, Kansas City, MO  64145.

13. Defendant Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley, hereinafter referred to as "Defendant" or "Defendant Company" or "St. Luke's," is a Kansas corporation with multiple location at which it provides medical services as a place of business in both Kansas and Missouri. Furthermore, Defendant is a place of "public accommodation" within the meaning of the ADA. 42 U.S.C. §12181(7)(F).

14. Defendant City of Leawood, Kansas, hereinafter referred as "Defendant City," is a political subdivision formed pursuant to the Constitution of the State of Kansas, and at all times material herein, is a "person" within the meaning of 42 U.S.C. §1983, which can be served with process thorough its Mayor, Peggy Dunn.

15. Defendant Jacob Woods, is an individual who is a citizen of the state of Kansas who was, all times relevant herein, employed as a police officer for the City of Leawood, Kansas. At all times material herein, Defendant Woods is a "person" within the meaning of 42 U.S.C. §1983.

16. Upon information and belief, on May 24, 2021, and at all other times relevant herein, Defendant Woods was employed by Defendant City as a police officer of the Leawood Police Department, and was operating within the course and scope of his employment as a police officer.

17. As Defendant Woods was an employee of Defendant City, operating within the course and scope of his employment, Defendant City is vicariously liable for Defendant Woods' tortious acts

and/or omissions via *Respondeat Superior*, as Defendant Wood was executing and/or implementing Defendant City official policy.

18. Defendant Woods is named in his individual capacity and also in his official capacity. Defendant Woods is personally liable for the violations of law and relief claimed herein.

19. Defendant Dale Finger, is an individual who is a citizen of the state of Kansas. At all times material herein, Defendant Woods is a "person" within the meaning of 42 U.S.C. §1983.

20. Upon information and belief, on May 24, 2021, Defendant Dale Finger, was employed by Defendant City as Chief of Police for the Leawood Police Department, and was operating within the course and scope of his employment as Chief of Police and a supervising police officer.

21.  As Defendant Finger was an employee of Defendant City, operating within the course and scope of his employment, Defendant City is vicariously liable for Defendant Woods tortious acts and/or omissions via *Respondeat Superior*, as Defendant Finger was executing and/or implementing Defendant City official policy.

22. At all times relevant to this Complaint, Defendant Finger has been actively engaged in the management, supervision and control of the operations, activities, affairs, finances, property, personnel and employment conditions of the Defendant City's Police Department.

23. Defendant Finger is named in his individual capacity and also in his official capacity. Defendant Woods is personally liable for the violations of law and relief claimed herein.

## IV. Facts Common to All Counts

24. Plaintiff is a 76-year-old, African American female.

25. On or about May 22, 2021, Plaintiff visited Defendant Company's community hospital at its Leawood location. (13200 State Line Rd, Leawood, KS 66209).

26. Plaintiff was initially seen at approximately 10PM at the Emergency room (ER).

27. Plaintiff presented with gastrointestinal concerns related to excruciating pain in her mid-to-lower abdomen.

28. Plaintiff complained of severe stomach cramping, nausea, and vomiting.

29. Plaintiff has an implanted port through which she receives medications.

30. Plaintiff requires a port as her veins are not easily accessible and routine IV insertions are typically incredibly painful for her.

31. On the night of Sunday, May 23, 2021, Plaintiff's nurses attempted accessing her port and were unsuccessful.

32. After multiple unsuccessful attempts were made to access her port, Plaintiff asked Defendant Company's staff to x-ray the port to check if it had flipped.

33. Plaintiff's port was x-rayed which confirmed that the port was in its correct position.

34. Plaintiff's nurses then attempted to access veins in her arms and hands and were again unsuccessful.

35. Soon after, Plaintiff was seen by Dr. Christopher Waldschmidt who informed Plaintiff that Defendant Company did not have long-enough needles to effectively access her port.

36. Plaintiff asked Dr. Waldschmidt when there would be proper needles available to which Dr. Waldschmidt answered, "I don't know, maybe during the next shift."

37. Dr. Waldschmidt continued efforts to insert Plaintiff's IV by attempting to access the jugular vein in her neck.

38. Dr. Waldschmidt was forceful with Plaintiff and leaned all his weight on top of her as he tried to access her jugular.

39. This process was extremely painful for Plaintiff.

40. Plaintiff expressed to Dr. Waldschmidt that she was in pain and pleaded for an alternative method through which an IV could be inserted.

41. Then, Dr. Waldschmidt removed the IV needle from the Plaintiff's neck and said to the Plaintiff, "it's obvious you don't want to be here, why don't you leave?"

42. Plaintiff responded that she did want to be treated and that she didn't want to leave until she could obtain relief from her symptoms.

43. Plaintiff then called her godson to let him know of the difficulties she was having.

44. Dr. Waldschmidt grabbed Plaintiff's phone from her hands and requested her godson come pick her up.

45. Dr. Waldschmidt returned Plaintiff's phone and walked out of the room.

46. Plaintiff was in Defendant Company's Leawood facility until approximately 3:15AM and only received citrate for her bowels.

47. Shortly after Dr. Waldschmidt had left, officers from Leawood Police Department entered Plaintiff's room and instructed her to leave the premises.

48. Plaintiff explained to the officers that she was too unwell to leave and continued requests for further medical attention.

49. The officers insisted the Plaintiff leave despite Plaintiff still needing medical attention.

50. As Plaintiff continued her requests for further medical attention, Officer Woods of the Leawood Police Department walked over to Plaintiff's hospital bed and grabbed her by her shoulders and arms to lift her out of the gurney.

51. While on her feet, Officer Woods shoved the Plaintiff into a wheelchair then proceeded to push her out to the front entrance of the emergency department.

52. Having received no medical treatment, Plaintiff attempted to explain to the officers that she did not feel well enough to drive.

53. Plaintiff asked the officers if she could wait in her car until she either could be seen by another physician or be picked up by her godson.

54. Officer Woods responded, telling the Plaintiff that she was not even allowed to park in any of lots within the surrounding business park area which were not under the care custody or control of Defendant St. Lukes and for which Plaintiff had not been informed that she could not frequent or visit for any reason as she had not been barred or asked to leave from any of those private premises by any business or individual in authority to assert such request upon her.

55. Confused and distressed, Plaintiff again requested to stay, suggesting that she would just sleep in her car in the parking lot until a new doctor came on duty in the morning as she was still experiencing significant gastrointestinal pain.

56. Officer Woods told Plaintiff she was not allowed back at any of Defendant Company's locations and any surrounding property near Defendant Company's Leawood location.

57.  Then, Officer Woods placed his hand on his taser and told the Plaintiff to "leave or suffer the consequences."

58. At this point, Plaintiff felt discriminated, isolated, and agreed to go home but was concerned about having to drive home alone.

59. Officer Woods demanded again that Plaintiff leave immediately and pushed Plaintiff's wheelchair up to her car.

60. Plaintiff left Defendant Company's Leawood location at approximately 4:00 a.m. on the morning of May 24, 2021.

61. Plaintiff has been left feeling extremely hurt from her experience with Defendant Company.

62. Plaintiff had never before experienced racial profiling or animus but her experience at Defendant Company's Leawood location has consequently made her fearful of going to the hospital or anywhere to receive medical care.

63. Plaintiff, who normally enjoys being active and social, now experiences serious paranoia, distress, and shame.

64. Plaintiff now makes a conscious effort to avoid the Leawood area on her outings, in fear of experiencing a similar interaction to the one she had at Defendant Company's Leawood location.

65. Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant Company conduct.

66. Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant Company conduct.

## V. Causes of Action

### COUNT I

### VIOLATION OF TITLE III OF THE ADA
### AGAINST DEFENDANT SAINT LUKE'S HEALTH SYSTEM, INC., D/B/A SAINT LUKE'S A/K/A SAINT LUKE'S PRIMARY CARE-BLUE VALLEY

67. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

68. Title III of the ADA provides that "[n]o individual shall be discriminated against

on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

69. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual," or "being regarded as having such an impairment." 42 U.S.C. §12102(1)(A) and (C). Diabetes, coronary atherosclerosis, thyroid nodules, and irritable bowel syndrome (IBS) all limit major life activity. 42 U.S.C. § 12102(2)(A).

70. Plaintiff has the following conditions which would be considered disabilities under the law; diabetes, coronary atherosclerosis, thyroid nodules, and irritable bowel syndrome, and therefore, she qualifies as an individual with a disability as defined by 42 U.S.C. § 12102(1)(A).

71. Defendant is a place of "public accommodation" within the meaning of the ADA. 42 U.S.C. § 12181(7)(F).

72. Defendant violated the ADA by denying Plaintiff the "opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

73. Furthermore, Defendant violated the ADA by affording the Plaintiffs an "opportunity to participate or benefit from a good, service...that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant Company on Count I of her Complaint, and for injunctive relief, attorney's fees, litigation expenses including expert witness fees, and cost, and for such other further relief as the

Court may deem just and equitable.

## COUNT II

### DISCRIMINATION UNDER 42 U.S.C. §1981
### AGAINST DEFENDANT SAINT LUKE'S HEALTH SYSTEM, INC., D/B/A SAINT
### LUKE'S A/K/A SAINT LUKE'S PRIMARY CARE-BLUE VALLEY

74. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

75. Plaintiff is an African American female.

76. Defendant St. Luke's denial of treatment for Plaintiff and seeking to have her leave as opposed to rendering her care were products of implicit bias exercised by Defendant Hospital and its staff against African-Americans.

77. Based upon information and belief, white patients who seek treatment and advocate for their treatment are not forcibly removed from the hospital and the unequal treatment given to African-American patients is attributed to enduring racist cultural beliefs and practices.

78. Defendant's discriminatory practices violated Plaintiff's rights to the full and equal enjoyment of all benefits of all laws and proceedings.

79. Defendant's creating of a hostile environment interfered with the rights of Plaintiff.

80. Plaintiff was discriminated against by Defendant based on her race, which thereby impaired her contractual relationship with Defendant in violation of Section 1981.

81. Defendant illegally discriminated against Plaintiff with regard to her race, in refusing to treat her.

82. Defendant acted with willful and wanton disregard for the equal rights of African American patients and engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant Company on Count II of her Complaint, and for compensatory damages, punitive and exemplary damages, injunctive relief, attorney's fees, litigation expenses and cost, and for such other further relief as the Court may deem just and proper.

## COUNT III

### DISCRIMINATION ON THE BASIS OF RACE – DENIAL OF SERVICES IN VIOLATION OF TITLE IV OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT SAINT LUKE'S HEALTH SYSTEM, INC., D/B/A SAINT LUKE'S A/K/A SAINT LUKE'S PRIMARY CARE-BLUE VALLEY

83. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

84. Defendant is a place of public accommodation within the meaning of Title IV of the Civil Rights Act of 1964.

85. Under, Title IV of the Civil Rights Act of 1964, no person in the United States shall, on the ground of race, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. 42 U.S.C. §2000d.

86. Defendant's facility, Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley, is covered by Title VI of the Civil Rights Act of 1964.

87. Defendant violated 42 U.S.C. §2000d by denying Plaintiff full and equal enjoyment of its services because of her race.

88. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

89. Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

90. WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant St. Luke's on Count III of her Complaint,

## COUNT IV

## VIOLATION OF THE EMERGENCY MEDICAL TREATMENT AND LABOR ACT (EMTALA) AGAINST DEFENDANT SAINT LUKE'S

91. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

92. Plaintiff went to Defendant's emergency department.

93. EMTALA requires Medicare-participating hospitals with emergency departments to screen and treat the emergency medical conditions of patients in a non-discriminatory manner. 42 CFR §489.24; 42 U.S.C. §1395dd.

94. If the hospital does not have the capability to treat the emergency medical condition, an appropriate transfer of the patient to another hospital must be done in accordance with the EMTALA provisions. 42 CFR §489.24; 42 U.S.C. §1395dd.

95. Plaintiff went to Defendant's Hospital presenting an emergency medical condition.

96. Defendant failed to treat Plaintiff's emergency medical condition.

97. Defendant failed to transfer Plaintiff to another hospital capable of treating Plaintiff.

98. If Defendant did not have long-enough needles to effectively access Plaintiff's port, Defendant should have transferred Plaintiff to another hospital capable of treating Plaintiff, per the EMTALA provisions.

99. Instead, Defendant kicked out Plaintiff out of the hospital without receiving treatment and even called the police to have her expelled from the hospital without further care and without justification or good reason.

100.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

101.     Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant Company on Count IV of her Complaint, and for civil money penalty of up to $50,000 for each violation (42 U.S.C. §1395dd(d)), compensatory damages, punitive and exemplary damages, injunctive relief, attorney's fees, litigation expenses and cost, and for such other further relief as the Court may deem just and proper.

<u>**COUNT V**</u>
<u>**Violation of 42 U.S.C. §1983 – Racial Discrimination & Deprivation of Civil Rights**</u>
<u>**Against Defendant Jacob Woods, Defendant Finger and Defendant City of Leawood, KS**</u>

102.     Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

103.     Defendant Woods decision to threaten and intimidate Plaintiff into leaving the premises violated Plaintiff's right to be free from racial discrimination and from unreasonable seizure and unreasonable force.

104.     Plaintiff at the time was a 76-year-old African American woman.

105. Defendant Woods actions against Plaintiff denied her rights under the law and were unreasonable under the circumstances and violated the clearly established rights to be free from discrimination and unreasonable seizure and/or force by Defendant Woods in his capacity as a police officer.

106. Defendant officer Woods grabbed Plaintiff from her shoulders and arms as he lifted Plaintiff out of the gurney. Defendant Woods shoved Plaintiff into a wheelchair and took her out

of the hospital. Defendant Woods then pushed Plaintiff's wheelchair up against Plaintiff's car. Defendant Woods threatened and intimidated Plaintiff when he placed his hand on his taser and told Plaintiff to "leave or suffer the consequences." Defendant Woods forced Plaintiff to drive and leave the premises, even after Plaintiff explained she did not feel well to drive because of her medical condition. Defendant Woods actions placed Plaintiff in danger and other civilians in danger.

107. The actions of Defendant Woods stated herein naturally arose from the performance of his duties as an officer and as part of his employment for Defendant City.

**Deprivation of Civil Rights**

108. The elderly disabled African-American female Plaintiff was subjected to various deprivations because of the actions and omissions cited above.

109. Plaintiff's race was a contributing and/or a motivating factor in the decision of Dfenadnt Woods to subject her to physical contact, to expel from a hospital in which she was seeking medical treatment prior to that treatment being rendered, and to prevent her from accessing other private properties from which she had not been banned and/or asked to leave.

110. Specifically, Plaintiff was deprived of rights, privileges, and immunities recited throughout this pleading, particularly including:

(a) the customs and usages of the State of Kansas,

(b) rights, privileges, and immunities secured to her by the Constitution and laws of the United States of America, and also the State of Kansas,

(c) the rights to security of person and freedom from unreasonable search and seizure as well as freedom from excessive force, guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and similar provisions of the Constitution of Kansas, (part of which is the right not to be deprived of liberty without due process of law, which includes the right to bodily integrity)

(d) the rights not to be deprived of life, liberty and the pursuit of happiness without due process of law (noting that the right not to be deprived of liberty without due process of law includes the right to bodily integrity) – both as to procedural due process and substantive due process – as well as the right to access the courts for fair litigation, all as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitution of Kansas,

(e) the right to be free from unreasonable search and seizure and arrest and excessive force, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitution of Kansas,

(f) equal protection of the law and equal privileges under the law, guaranteed by the Fourteenth Amendment to the United States Constitution and similar provisions of the Constitution of Kansas.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant Finger, Defendant Woods and Defendant City on Count V of her Complaint, and for actual damages, punitive damages, attorney fees, costs, and expenses pursuant to 42 U.S.C. 1988, and for such other further relief as the Court may deem just and proper.

## COUNT VI
### Violation of 42 U.S.C. §1983 – Use of Excessive Force
### Against Defendant Jacob Woods

111. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

112. Defendant Woods decision to threaten and intimidate Plaintiff into leaving the premises violated Plaintiff's right to be free from excessive force by police officers.

113. The use of excessive force by Defendant Woods against Plaintiff was unreasonable under the circumstances and violated the clearly established rights under the Fourteenth Amendment to the United States Constitution to be free from excessive force by police officers.

114. Plaintiff was unarmed and did not pose a threat to harm Defendant Woods.

115. Officer Woods grabbed Plaintiff from her shoulders and arms as he lifted Plaintiff out of

the gurney. Officer Woods shoved Plaintiff into a wheelchair and took her out of the hospital. Officer Woods then pushed Plaintiff's wheelchair up against Plaintiff's car. Officer Woods threatened and intimidated Plaintiff when he placed his hand on his taser and told Plaintiff to "leave or suffer the consequences." Officer Woods forced Plaintiff to drive and leave the premises, even after Plaintiff explained she did not feel well to drive because of her medical condition. Officer Woods actions placed Plaintiff in danger and other civilians in danger.

116. The actions of Defendant Woods stated herein naturally arose from the performance of his duties as an officer and as part of his employment for Defendant City.

**Deprivation of Civil Rights**

117. The elderly disabled African-American female Plaintiff was subjected to various deprivations because of the actions and omissions cited above.

118. Plaintiff's race was a contributing and/or a motivating factor in the decision of Defendant Woods to subject her to physical contact, to expel from a hospital in which she was seeking medical treatment prior to that treatment being rendered, and to prevent her from accessing other private properties from which she had not been banned and/or asked to leave.

119. Specifically, Plaintiff was deprived of rights, privileges, and immunities recited throughout this pleading, particularly including:

(a) the customs and usages of the State of Kansas,

(b) rights, privileges, and immunities secured to her by the Constitution and laws of the United States of America, and also the State of Kansas,

(c) the rights to security of person and freedom from unreasonable search and seizure as well as freedom from excessive force, guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and similar provisions of the Constitution of Kansas, (part of which is the right not to be deprived of liberty without due process of law, which includes the right to bodily integrity)

(d) the rights not to be deprived of life, liberty and the pursuit of happiness without due process of law (noting that the right not to be deprived of liberty without due process of law includes the right to bodily integrity) – both as to procedural due process and substantive due process – as well as the right to access the courts for fair litigation, all as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitution of Kansas,

(e) the right to be free from unreasonable search and seizure and arrest and excessive force, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitution of Kansas,

(f) equal protection of the law and equal privileges under the law, guaranteed by the Fourteenth Amendment to the United States Constitution and similar provisions of the Constitution of Kansas.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant Woods, Defendant Finger and Defendant City on Count VI of her Complaint, and for actual damages, punitive damages, attorney fees, costs, and expenses pursuant to 42 U.S.C. 1988, and for such other further relief as the Court may deem just and proper.

### COUNT VII
### Violation of 42 U.S.C. §1983
### Against Defendant City of Leawood, Kansas and Defendant Dale Finger

121.     Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

122.     Defendant Finger and Defendant City are responsible for establishing, maintaining, enforcing and/or training regarding office policies, procedures, patterns, practices, and/or customs of the Leawood Police Department for the Leawood Police Department's use of force policies and procedures and the training of its officers on the relevant state and federal laws and the rights of persons to be free from unreasonable searches, seizures, deprivation of civil rights and to be free from unreasonable use of force by the Police.

123.     Defendant Finger and Defendant City deliberately and with reckless disregard for

the constitutional rights of the citizen, failed to establish adequate and sufficient policies and procedures for training supervisors and officers within the Leawood Police Department to safely effectuate interactions with minorities and those seeking necessary medical assistance at medical service providers who have a right to treatment under federal law and private contract.

124.    The actions and inactions of Defendant Wood resulted from the training, or lack thereof, he received in implementing and/or executing the policies, procedures, patterns, statements, regulations, decisions, customs, and/or practices established, maintained, enforced, and/or adopted by Defendant Finger and Defendant City.

120. The respective policies, procedures, patterns, practices, and/or customs of Defendant Finger and Defendant City were a moving force behind, and effectively caused Plaintiff's injuries and damages.

121. Specifically, Plaintiff was deprived of rights, privileges, and immunities recited throughout this pleading, particularly including:

> (a) the customs and usages of the State of Kansas,

> (b) rights, privileges, and immunities secured to her by the Constitution and laws of the United States of America, and also the State of Kansas,

> (c) the rights to security of person and freedom from unreasonable search and seizure as well as freedom from excessive force, guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and similar provisions of the Constitution of Kansas, (part of which is the right not to be deprived of liberty without due process of law, which includes the right to bodily integrity)

> (d) the rights not to be deprived of life, liberty and the pursuit of happiness without due process of law (noting that the right not to be deprived of liberty without due process of law includes the right to bodily integrity) – both as to procedural due process and substantive due process – as well as the right to access the courts for fair litigation, all as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitution of Kansas,

(e) the right to be free from unreasonable search and seizure and arrest and excessive force, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and similar provisions of the Constitution of Kansas,

(f) equal protection of the law and equal privileges under the law, guaranteed by the Fourteenth Amendment to the United States Constitution and similar provisions of the Constitution of Kansas.

125.     As a direct and proximate result of the conduct of Defendant Finger and Defendant City, Plaintiff has been injured and is entitled to recover damages for the deprivation of her constitutional rights; mental anguish; and emotional pain, torment, and suffering experience by Plaintiff as a result of Defendant Woods actions.

126.     Plaintiff is entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant Finger and Defendant City on Count VII of her Complaint, and for actual damages, punitive damages attorney fees, costs, and expenses pursuant to 42 U.S.C. 1988, and for such other further relief as the Court may deem just and proper.

## VI. Prayer for Relief

127.     Wherefore, Plaintiff prays that this Court:

   a.   declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

   b.   enjoin Defendants, and its managers/supervisors from engaging in such conduct;

   c.   award Plaintiff compensatory, punitive and liquidated damages against all Defendants;

   d.   award Plaintiff damages for emotional pain and suffering;

e.  award Plaintiff her costs and attorneys' fees; and

f.  grant such other relief as it may deem just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby designates the place and location for the jury trial of this matter at the Federal

District Court House located in Kansas City, Kansas.


Respectfully submitted,

By: /s/ *Kevin Baldwin*

Kevin Baldwin, KS Bar No. #18637
Eric Vernon, KS Bar No. #21358
Sylvia Hernandez, KS Bar No. #78914
**BALDWIN & VERNON**
108 S. Pleasant St.
Independence, MO 64050
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
Sylvia@bvalaw.net
ATTORNEYS FOR PLAINTIFF