IN THE UNITED STATES DISTRICT COURT
FOR THE TENTH CIRCUIT IN KANSAS

| | |
|---|---|
| **MURIEL MARTIN** ) | |
| 807 Tam-O-Shanter Drive ) | |
| Kansas City, MO 64145 ) | |
| ) | |
| Plaintiff, ) | Case No.  2:23-cv-02227-HLT-ADM |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| **SAINT LUKE'S HEALTH SYSTEM, INC.** ) | |
| **D/B/A SAINT LUKE'S A/K/A** ) | |
| **SAINT LUKE'S PRIMARY CARE** ) | |
| **-BLUE VALLEY** ) | |
| 5405 W. 151st Street ) | |
| Leawood, KS 66224 ) | |
| ) | |
| Serve:  Registered Agent ) | |
| **Corporation Service Company** ) | |
| **2900 SW Wanamaker Dr. Suite 204** ) | |
| **Topeka, KS  66614** ) | |
| ) | |
| **Defendant.** ) | |

**FIRST AMENDED COMPLAINT**

**I. Preliminary Statement**

1. COMES NOW, Plaintiff, Muriel Martin, by and through her attorneys of record, of the law firm Baldwin & Vernon, and brings this cause of action against Defendant Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley, hereinafter referred to as "Defendant" or "Defendant Company" or "St. Luke's." This action seeks declaratory, injunctive and equitable relief, actual, compensatory and punitive damages, and cost and attorneys' fees in accordance with Federal Rules of Civil Procedure 54, for Defendant's conduct and actions taken against Plaintiff.

**II. Jurisdiction & Venue**

2. This Court has jurisdiction over the subject matter and over the parties named herein,

because Defendant is believed to be domiciled within the State of Kansas and all events giving rise to the claims occurred in the State of Kansas.

3. This Court has original jurisdiction in this action pursuant to 28 U.S.C. sections 1331 and 1343, 42 U.S.C. 1981, in as much as the matter in controversy is brought pursuant to Title III of the ADA, 42 U.S.C. §12182, 28 CFR 35.130, and 42 U.S.C. §12101, et seq.

4. Plaintiff is alleging claims of public accommodation under the Title III of the ADA, 42 U.S.C. §12182, 28 CFR 35.130, Title VI of the Civil Rights Act of 1964, and discrimination under 42 U.S.C. §1981, and claims under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. 1395dd.

5. This is an action for declaratory and permanent injunctive relief to enforce the rights of Plaintiffs' members under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C § 1395dd.

6. Because this is a civil action arising under laws of the United States, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Because Defendant resides within the Federal District of Kansas, venue is proper under 28 U.S.C. § 1391(b)(1).

## EMTALA STATUTORY FRAMEWORK

7. EMTALA states, *inter alia*, that any hospital that receives Medicare funds and operates an emergency department:

   i. must stabilize any individual determined to have an emergency medical condition, *see* 42 U.S.C.§ 1395dd(b); and

   ii. ii. may not transfer (which includes discharge) any individual with an emergency medical condition who has not been stabilized, unless, *inter alia*, the individual requests a transfer or a physician certifies that the benefits of a transfer to another medical facility outweigh the increased risks to the patient, *see id.* § 1395dd(c).

8. EMTALA defines an emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual . . . in serious jeopardy, [cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." Id. § 1395dd(e)(1)(A).

9. EMTALA defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" Id. § 1395dd(e)(3)(A).

10. Defendant Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley receive Medicare funds and operate emergency departments and are subject to the requirements of EMTALA.

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (b)(1) and (2), because Defendant resides in this judicial district and all events giving rise to the claim occurred in this judicial district.

### III. Parties

12. Plaintiff is an individual and resident of United States, State of Missouri, residing at 807 Tam-O-Sham Drive, Kansas City, MO  64145.

13. Defendant Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint Luke's Primary Care-Blue Valley, hereinafter referred to as "Defendant" or "Defendant Company" or "St. Luke's," is a Kansas corporation with multiple location at which it provides medical services as a place of business in both Kansas and Missouri. Furthermore, Defendant is a place of "public accommodation" within the meaning of the ADA. 42 U.S.C. §12181(7)(F).

### IV. Facts Common to All Counts

14. Plaintiff is a 76-year-old, African American female.

15. On or about May 22, 2021, Plaintiff visited Defendant St. Luke's community hospital at its Leawood location. (13200 State Line Rd, Leawood, KS 66209).

16. Plaintiff was initially seen at approximately 10PM at the Emergency room (ER).

17. Plaintiff presented with gastrointestinal concerns related to excruciating pain in her mid-to-lower abdomen.

18. Plaintiff complained of severe stomach cramping, nausea, and vomiting.

19. Plaintiff has an implanted port through which she receives medications.

20. Plaintiff requires a port as her veins are not easily accessible and routine IV insertions are typically incredibly painful for her.

21. On the night of Sunday, May 23, 2021, Plaintiff's nurses attempted accessing her port and were unsuccessful.

22. After multiple unsuccessful attempts were made to access her port, Plaintiff asked Defendant St. Luke's staff to x-ray the port to check if it had flipped.

23. Plaintiff's port was x-rayed which confirmed that the port was in its correct position.

24. Plaintiff's nurses then attempted to access veins in her arms and hands and were again unsuccessful.

25. Soon after, Plaintiff was seen by Dr. Christopher Waldschmidt who informed Plaintiff that Defendant St. Luke's did not have long-enough needles to effectively access her port.

26. Plaintiff asked Dr. Waldschmidt when there would be proper needles available to which Dr. Waldschmidt answered, "I don't know, maybe during the next shift."

27. Dr. Waldschmidt continued efforts to insert Plaintiff's IV by attempting to access the jugular vein in her neck.

28. Dr. Waldschmidt was forceful with Plaintiff and leaned all his weight on top of her as he tried to access her jugular.

29. This process was extremely painful for Plaintiff.

30. Plaintiff expressed to Dr. Waldschmidt that she was in pain and pleaded for an alternative method through which an IV could be inserted.

31. Then, Dr. Waldschmidt removed the IV needle from the Plaintiff's neck and said to the Plaintiff, "it's obvious you don't want to be here, why don't you leave?"

32. Plaintiff was also told, "if you don't like it here you can go."

33. Plaintiff responded that she did want to be treated and that she didn't want to leave until she could obtain relief from her symptoms.

34. Plaintiff then called her godson to let him know of the difficulties she was having.

35. Dr. Waldschmidt grabbed Plaintiff's phone from her hands and requested her godson come pick her up.

36. Dr. Waldschmidt returned Plaintiff's phone and walked out of the room.

37. Plaintiff was in Defendant St. Luke's Leawood facility until approximately 3:15AM and only received citrate for her bowels.

38. Shortly after Dr. Waldschmidt had left, two officers from Leawood Police Department entered Plaintiff's room and instructed her to leave the premises.

39. Defendant St. Luke's called Leawood Police Department to have Plaintiff removed. Yet, Plaintiff had not done anything wrong.

40. Plaintiff explained to the officers that she was too unwell to leave and continued requests for further medical attention.

41. The officers informed Plaintiff she had to leave despite Plaintiff still needing medical attention.

42. Plaintiff continued her requests for further medical attention.

43. The officers then escorted Plaintiff out of the hospital in a wheelchair.

44. Having received no medical treatment, Plaintiff attempted to explain to the officers that she did not feel well enough to drive.

45. Plaintiff asked the officers if she could wait in her car until she could be seen by another physician.

46. Plaintiff was told she was could not wait in the car and she was not even allowed to park in any of lots within the surrounding business park area.

47. Plaintiff was surprised by this as the surrounding business parking lots were not under the care custody or control of Defendant St. Luke's and Plaintiff had not been informed that she could not frequent or visit for any reason as she had not been barred or asked to leave from any of those private premises by any business or individual in authority to assert such request upon her.

48. Confused and distressed, Plaintiff again requested to stay, suggesting that she would just sleep in her car in the parking lot until a new doctor came on duty in the morning as she was still experiencing significant gastrointestinal pain.

49. Plaintiff was then told she was not allowed back ever again to that location of Defendant St. Luke's and any surrounding property near Defendant St. Luke's Leawood location.

50. At this point, Plaintiff felt discriminated, isolated, and agreed to go home but was concerned about having to drive home alone.

51. While out in the parking lot, a nurse of Defendant St. Luke's, Matthew Frey, told Plaintiff she needed to leave the premises of Defendant St. Luke's.

52. When Plaintiff tried to explain to Matthew that she still wanted to be seen by a doctor as she was in pain, Matthew told Plaintiff they did not have needles to access her port, as they only had two needles and they had used them already.

53. However, Plaintiff had been told she could go back during the next shift. When Plaintiff tried to explain this to Matthew, she was told that it would six to eight days to get more needles.

54. Matthew then again told Plaintiff she needed to leave.

55. Plaintiff left Defendant St. Luke's Leawood location at approximately 4:00 a.m. on the morning of May 24, 2021.

56. Plaintiff has been left feeling extremely hurt from her experience with Defendant St. Luke's.

57. Plaintiff had never before experienced racial profiling or animus but her experience at Defendant St. Luke's Leawood location has consequently made her fearful of going to the hospital or anywhere to receive medical care.

58. Plaintiff, who normally enjoys being active and social, now experiences serious paranoia, distress, and shame.

59. Plaintiff now makes a conscious effort to avoid the Leawood area on her outings, in fear of experiencing a similar interaction to the one she had at Defendant St. Luke's Leawood location.

60. Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, garden variety emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant St. Luke's conduct.

61. Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant St. Luke's conduct.

**V. Causes of Action**

## COUNT I

### VIOLATION OF TITLE III OF THE ADA
### AGAINST DEFENDANT SAINT LUKE'S HEALTH SYSTEM, INC., D/B/A SAINT LUKE'S A/K/A SAINT LUKE'S PRIMARY CARE-BLUE VALLEY

62. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

63. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

64. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual," or "being regarded as having such an impairment." 42 U.S.C. §12102(1)(A) and (C). Diabetes, coronary atherosclerosis, thyroid nodules, and irritable bowel syndrome (IBS) all limit major life activity. 42 U.S.C. § 12102(2)(A).

65. Plaintiff has the following conditions which would be considered disabilities under the law; diabetes, coronary atherosclerosis, thyroid nodules, and irritable bowel syndrome, and therefore, she qualifies as an individual with a disability as defined by 42 U.S.C. § 12102(1)(A).

66. Defendant is a place of "public accommodation" within the meaning of the ADA. 42 U.S.C. § 12181(7)(F).

67. Defendant violated the ADA by denying Plaintiff the "opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or

accommodation of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).

68. Furthermore, Defendant violated the ADA by affording the Plaintiffs an "opportunity to participate or benefit from a good, service...that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant St. Luke's on Count I of her Complaint, and for injunctive relief, attorney's fees, litigation expenses including expert witness fees, and cost, and for such other further relief as the Court may deem just and equitable.

## COUNT II

### DISCRIMINATION UNDER 42 U.S.C. §1981
### AGAINST DEFENDANT SAINT LUKE'S HEALTH SYSTEM, INC., D/B/A SAINT LUKE'S A/K/A SAINT LUKE'S PRIMARY CARE-BLUE VALLEY

69. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

70. Plaintiff is an African American female.

71. Defendant St. Luke's denial of treatment for Plaintiff and seeking to have her leave as opposed to rendering her care were products of implicit bias exercised by Defendant Hospital and its staff against African-Americans.

72. Based upon information and belief, white patients who seek treatment and advocate for their treatment are not forcibly removed from the hospital and the unequal treatment given to African-American patients is attributed to enduring racist cultural beliefs and practices.

73. Defendant's discriminatory practices violated Plaintiff's rights to the full and equal enjoyment of all benefits of all laws and proceedings.

74. Defendant's creating of a hostile environment interfered with the rights of Plaintiff.

75. Plaintiff was discriminated against by Defendant based on her race, which thereby impaired her contractual relationship with Defendant in violation of Section 1981.

76. Defendant illegally discriminated against Plaintiff with regard to her race, in refusing to treat her.

77. Defendant acted with willful and wanton disregard for the equal rights of African American patients and engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant St. Luke's on Count II of her Complaint, and for compensatory damages, punitive and exemplary damages, injunctive relief, attorney's fees, litigation expenses and cost, and for such other further relief as the Court may deem just and proper.

## COUNT III

**DISCRIMINATION ON THE BASIS OF RACE – DENIAL OF SERVICES IN VIOLATION OF TITLE IV OF THE CIVIL RIGHTS ACT OF 1964 AGAINST DEFENDANT SAINT LUKE'S HEALTH SYSTEM, INC., D/B/A SAINT LUKE'S A/K/A SAINT LUKE'S PRIMARY CARE-BLUE VALLEY**

78. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

79. Defendant is a place of public accommodation within the meaning of Title IV of the Civil Rights Act of 1964.

80. Under, Title IV of the Civil Rights Act of 1964, no person in the United States shall, on the ground of race, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance. 42 U.S.C. §2000d.

81. Defendant's facility, Saint Luke's Health System, Inc., d/b/a Saint Luke's a/k/a Saint

Luke's Primary Care-Blue Valley, is covered by Title VI of the Civil Rights Act of 1964.

82. Defendant violated 42 U.S.C. §2000d by denying Plaintiff full and equal enjoyment of its services because of her race.

83. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

84. Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

85. WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant St. Luke's on Count III of her Complaint,

## COUNT IV

### VIOLATION OF THE EMERGENCY MEDICAL TREATMENT AND LABOR ACT (EMTALA) AGAINST DEFENDANT SAINT LUKE'S

86. Plaintiff hereby incorporates and re-alleges all previously alleged paragraphs as if fully set forth herein.

87. Plaintiff went to Defendant's emergency department.

88. EMTALA requires Medicare-participating hospitals with emergency departments to screen and treat the emergency medical conditions of patients in a non-discriminatory manner. 42 CFR §489.24; 42 U.S.C. §1395dd.

89. If the hospital does not have the capability to treat the emergency medical condition, an appropriate transfer of the patient to another hospital must be done in accordance with the EMTALA provisions. 42 CFR §489.24; 42 U.S.C. §1395dd.

90. Plaintiff went to Defendant's Hospital presenting an emergency medical condition.

91. Defendant failed to treat Plaintiff's emergency medical condition.

92. Defendant failed to transfer Plaintiff to another hospital capable of treating Plaintiff.

93. If Defendant did not have long-enough needles to effectively access Plaintiff's port, Defendant should have transferred Plaintiff to another hospital capable of treating Plaintiff, per the EMTALA provisions.

94. Instead, Defendant kicked out Plaintiff out of the hospital without receiving treatment and even called the police to have her expelled from the hospital without further care and without justification or good reason.

95. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

96. Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully prays for a judgment in her favor and against Defendant St. Luke's on Count IV of her Complaint, and for civil money penalty of up to $50,000 for each violation (42 U.S.C. §1395dd(d)), compensatory damages, punitive and exemplary damages, injunctive relief, attorney's fees, litigation expenses and cost, and for such other further relief as the Court may deem just and proper.

## VI. Prayer for Relief

121.    Wherefore, Plaintiff prays that this Court:

    a.  declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

    b.  enjoin Defendant, and its managers/supervisors from engaging in such conduct;

    c.  award Plaintiff compensatory, punitive and liquidated damages against

Defendant;

 d. award Plaintiff damages for emotional pain and suffering;

 e. award Plaintiff her costs and attorneys' fees; and

 f. grant such other relief as it may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the place and location for the jury trial of this matter at the Federal District Court House located in Kansas City, Kansas.

Respectfully submitted,

By: /s/ *Kevin Baldwin*

Kevin Baldwin, KS Bar No. #18637
Eric Vernon, KS Bar No. #21358
Sylvia Hernandez, KS Bar No. #78914
**BALDWIN & VERNON**
108 S. Pleasant St.
Independence, MO 64050
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net
Sylvia@bvalaw.net
ATTORNEYS FOR PLAINTIFF